IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BELINDA BOLDEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 11-467 |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                         January 9, 2013

Defendants' motion for summary judgment was served on plaintiff on December 3, 2012. No response has been filed to it as of the date of this opinion.

The uncontested facts as set forth in defendants' brief follow:

At the time of the events giving rise to this litigation, Comer Rucker, Vito Maniscalco, Marissa Burton, Patricia Robinson, and Shawn Greene were corrections officers working in the Special Needs Unit ("SNU") at SCIG. Declarations of Comer Rucker, Vito Maniscalco, and Marissa Burton, Exhibits A through C of defendants' brief, ("Rucker"), ("Maniscalco") and ("Burton"), respectively. See Employee Report of Incident for Robinson and Greene, Exhibits D and E of defendants' brief.

On January 20, 2009, decedent was placed in the infirmary after incurring a misconduct for refusing to obey orders. See Misconduct B011471, Exhibit F of defendants' brief. The misconduct noted that decedent claimed to be suicidal. Id. After several days of observation and self-reported, continuous, auditory hallucinations, Bolden was moved to the SNU. See

Psychiatric Progress Notes, p. 1, Exhibit G of defendants' brief.  He was placed on Q15, otherwise known as suicide watch, requiring him to be visually checked every fifteen minutes.  Id.  See Rucker, ¶ 4; Maniscalco, ¶¶ 4-5.  See also Adjustment Record for Level 5 Inmate and Fifteen Minute Check Logs for January 24 through 25, 2009, Exhibit H of defendants' brief.  By January 24, 2009, Bolden was complaining that he "wasn't feeling well mentally" and that he "felt like something was going to happen."  Exhibit G of defendants' brief.  Later that evening, Greene, while conducting rounds in the SNU, noticed some blood smeared around Bolden's mouth.  See Exhibit E and Exhibit I of defendants' brief, Housing Unit Report for January 24, 2009, 10:00 p.m. to 6:00 a.m. shift, hereto.  He called the medical department, and a nurse responded, examined and cleared Bolden for continued custody in the SNU.  Id.  The autopsy shows that the blood probably came from a small cut inside of decedent's mouth.  Exhibit L.

      The next day, during the 6:00 a.m. to 2:00 p.m. shift, Maniscalco checked on Bolden during his last set of rounds, at 1:45 p.m.  Maniscalco, ¶ 5; Exhibit J, Extraordinary Occurrence Report; Exhibit D.  He yelled for him twice from down the corridor and received no response.  Maniscalco, ¶ 6; Exhibit I; Exhibit K, Employee Report of Incident for Maniscalco.  He then walked over and looked inside his cell.  Id.  Maniscalco observed that Bolden was lying on his bed unresponsive.  Maniscalco, ¶¶ 6-8; Rucker, ¶¶ 7-9.  He called for Rucker to come to the cell.  Id.  He also yelled to Robinson, who was working in the control bubble, to open the cell door and call the medical department.  Maniscalco, ¶ 9; Rucker, ¶ 8.  Maniscalco and Rucker then tried to rouse Bolden but were unable to bring him around.  Maniscalco, ¶ 8.

      Medical staff arrived, confirmed that Bolden was not breathing and began CPR.  Exhibit J, p. 2.  Several nurses from the medical department then lay him onto a stretcher and took him to

the dispensary.  Id.  They attended to him there while they waited for EMS to arrive.  Id.  Bolden never regained consciousness and was declared dead about 30 minutes later.  Id.  Marissa Burton reported to the SNU for her 2:00 p.m. to 10:00 p.m. shift in the control bubble at 2:05 p.m., fifteen minutes after Bolden had been taken to the dispensary.  Burton, ¶¶ 4-6.  She was not present for any of the incident.  Id.  An autopsy was conducted by the Montgomery County Coroner's Office.  See Exhibit L, Autopsy Report for Shawn Bolden.  The Coroner's Office was unable to determine the cause of death but found that Bolden's manner of death was natural causes.  Id.

While it is plaintiff's claim that the defendants beat Bolden to death, no competent evidence has been produced to support that claim.  In this regard, it should be noted that the first scheduling order filed on April 2, 2012 allowed discovery until July 31, 2012.  On defendants' motion, the court extended discovery until September 18, 2012.

The unrebutted statements with regard to plaintiff's lack of evidence follows:

Among the discovery materials supplied by Plaintiff was a list of witnesses sent in response to Defendants' interrogatories.  See Exhibit M, Plaintiff's Answers to Defendants' Interrogatories, hereto.  In her responses Plaintiff listed five current inmates and two former inmates as witnesses.  Id.  Defendants deposed each of the five inmate/witnesses listed.  Not one testified to having any personal knowledge of the events alleged by Plaintiff.  In the instances where the witness actually knew Bolden, they only testified to rumors circulating around SCIG rather than from their own observations and interactions.  See Exhibits N, Deposition of David Shepherd, 4:18-6:24; O, Deposition of Keith Harris, 3:15-4:21; P, Deposition of Kareem

Sampson, 5:15-7:12; Q, Deposition of Terrell Carter, 6:16-7:9, 7:20-8:9, 8:21-9:20, 10:15-16; R, Deposition of Vernon Corey, 6:12-17, 7:8-8:6.

Two other witnesses listed in response to Defendants' interrogatories, Leroy Allen and Jodi Epps, were allegedly inmates at SCIG when Bolden died.  Exhibit M.  Their proposed testimony reports to follow along the same lines as that of the deposed inmates.  Id.  Similarly, they have no firsthand knowledge of the events giving rise to the lawsuit either.  Exhibit N.

Based upon the uncontested facts and the statements aforesaid, the motion of defendants will be granted.